All right, if council are ready, let's call 22-9526 Farnum v. Garland, Mr. Hall. Good morning and may it please the court. My name is Aaron Hall and I appear on this court to grant her petition for review, vacate the agency order, and remand to the agency for further proceedings. Petitioner submitted and pursued a frivolous asylum application under a false name. That fact is not in dispute today. What is in dispute, however, is whether the BIA was free to ignore the plain text of its own regulations to invoke the frivolous to bar Ms. Farnum from seeking any relief from removal. Section 1158d6 provides that where a non-citizen has made a frivolous asylum claim after receiving proper notice, the non-citizen becomes permanently ineligible for immigration benefits, effective as of the date of a final determination on such application. Final determination is not defined in the statute. And so in 1997, the agency interpreted section 1158d6 through implementing regulations found at 8 CFR 120820. In its regulations, the agency announced that an applicant is subject to the frivolous asylum bar only if a final order by an immigration judge or the BIA specifically finds that the non-citizen filed a frivolous asylum application. In other words, the regulation promulgated following notice and comment interpreted the statute's requirement for a final determination to mean that the bar can only be triggered if there's a final order, specifically finding the filing of a frivolous asylum application. We now have that here based on the BIA appeal. What do we do about that? So the, and the government raised this as well, Judge. If the court agrees with our plain language interpretation of the regulation that this was handled improperly by the agency, then what we're requesting is that this court vacate the agency order and remand for further proceedings, in which case the remanded proceedings are not going to be precluded by the frivolous application bar. What power do we have to vacate that final order? You know, what gives us the, the authority to do that? Even, even if the agency, you know, violated, violated one of its rules, it still reached, reached out and made this decision. You know, what, what gives us the power to vacate that order and require a do-over? Well, where the agency violates its own regulations, the, the, this court has the power to, to vacate the order and remand to the agency for proceedings that are in, in accord with its regulations. I wanted to, I think this goes a little bit to your point, I wanted to address kind of how this should look if, if the court was, if this case was remanded or if the case had been handled correctly in the first instance. So an immigration judge in this, in this instance, in this circumstance should, can and should go through all the, the factors to determine whether a frivolous asylum application had been filed. If they find that it, that it had, then that should be included in their final order. However, if the bar was not, had not been triggered during the proceedings, the proper path for the judge to take would have been to have adjudicated the applications for relief on the merits with the frivolous asylum application being a heavy factor on the negative side of the merits, on the negative side of the ledger. We would imagine that that would often lead to a denial. And then in the future, after the denial, after that order becomes final, all immigration benefits would be barred using the asylum. Can IJ in these circumstances decide the frivolousness issue and then abate the other two and allow a, I guess it'd be the equivalent of an interlocutory appeal to the BIA? I mean, is there, is there some mandate that the, that the IJ has to do it a particular way? I don't believe that there's a mandate that the IJ would have to do it that way. That was, that was raised below by the BIA, actually, that, that that procedure wouldn't make sense. And while the interlocutory appeal at the BIA does exist, it's not common. And I wouldn't imagine that it would take place in these circumstances. Rather, the more common, the more common procedure would be for the IJ to make the decision on the merits of the case and include a frivolousness finding, if appropriate. If the application was denied as a matter of discretion, then as this court knows, the, the applications for relief are going to be subject to very little, if any, judicial review after that. And that will be the end of the matter and the bar will be in place going forward. Yeah. The BIA also tried to clean this up by ruling, you know, basically breaching the merits and now arguing harmless error. What's the, how should we respond to that? Yeah. The, the BIA basically said that, well, in case, in the event that the, the, the petitioner was right, then now we're making this finding. And now the, the application is barred going forward. But again, that's what we're asking this court to, to do is to vacate that order and remand for, for further proceedings. What my client is asking for is the chance to have her application for relief, heard on the merits as a matter of discretion, using the factors that the board has announced in matter of Tijon. And my client understands that, that given the, the immigration history in her case, it's, it's probably an uphill battle. And the majority of cases in these, in this posture are probably going to get denied given the gravity of the underlying fraud, but they should not be denied under the frivolous asylum application bar, which had not properly been triggered at the time these proceedings were ongoing. They should be denied as a matter of discretion. What do we do with the comment in the BIA opinion? I think it's in a footnote that Ms. Farnham waived the issue. That is, she didn't challenge the frivolous asylum application determination before the BIA. Your Honor, if I understand your question correctly, I believe that the BIA was referring to the, that she waived any, any challenge to the finding of frivolous, frivolousness. And that's true. We did not challenge that it was a frivolous application and she did not challenge that it was a frivolous application. The only challenge is to whether the statutory bar was triggered to, to block her applications for relief. Well, okay. But how would you link the fact that she doesn't challenge the frivolous asylum application determination on the one hand and harmless error on the other? She's not challenging it. Why is there any error here? Thank you. So... Error that's harmless, I should say. Sorry. Understood, Your Honor. The error is because the... Well, I know there's a, you're arguing error. I'm more on the harmless part of the... Understood. The harm comes in because under a proper interpretation of the plain language of the regulations, she is going to have the chance to present her case to the immigration judge. She's going to have the chance to say, I understand. I did all of these things wrong. I own them. Here are all positive equities in my case. Here are all the positive equities about my life. And dear immigration judge, please exercise your discretion in my favor in granting those applications for relief. Without that interpretation, under the government's interpretation here, she doesn't get that chance. She just is found barred from applying for relief. And so therein lies the harm. Are you... Are you arguing... Well, as to the statute and the regulation, are you saying that both of them are plain and unambiguous, or is one or the other of them ambiguous? Thank you for that question. This was actually brought up in the government answer brief in a footnote, I think at page 36. And what the government's position was, at least in that was, at the very least, the statute has ambiguity. And therefore, the government pleads for some deference in its interpretation here. I would actually agree that the statute has ambiguity, because that final determination, that language, is not otherwise defined in the statute. However, what they're asking for deference to would actually be the deference to the regulation, because the agency took that ambiguity. And to the extent that there is a blank space left in the statute, the agency chose to fill it by a regulation. And the regulation determined that the final determination had to be a final order by an immigration judge or by the BIA. And final order is elsewhere defined in the statute at section 1101-47A... 847, excuse me. And so to the extent that there's any deference, it would be to the agency's regulation. They filled in the statute. They filled in the ambiguity right there. They should not get any deference to a decision to not abide by the plain language of their interpretation in the regulation. And in fact, in a published case matter at HYZ, the agency referred to the time when an order goes final for these purposes as the time the BIA dismisses the appeal. So their understanding has been consistent with ours as far as when an order goes final. I wanted to address, if the Court would allow, the distinction between Ms. Farnam's case and the case in Rebus. So Rebus had in some ways a factually similar, in many ways a factually similar case, where the respondent filed a frivolous asylum application. That respondent actually appealed the IJ denial and the frivolousness finding to the BIA and lost their appeal. Afterwards, that became a final order and the frivolous asylum bar was triggered unquestionably. The twist in Rebus is that thereafter, the non-citizen married a U.S. citizen and sought to reopen the proceedings. And the Board of Immigration Appeals did reopen the proceedings. But the case was then remanded to the IJ and the IJ again found there was a frivolous application bar. And then the case came all the way up to the Tenth Circuit. In some, the Rebus case had a frivolous asylum bar that was unquestionably triggered because there was a final order. That is different than Ms. Farnam's case because at the time, the IJ and the BIA were considering her applications for relief under the language and the regulations. There absolutely was no frivolous application bar. With the Court's permission, I would reserve the remainder of my time for rebuttal. You may. Thank you. May it please the Court, Jessica Daugert for the Attorney General. The INA, the regulations, and case law all make clear that the frivolous asylum bar is invoked at the time that the agency made the frivolousness determination. Any relief is then barred in future proceedings. Here, Mrs. Farnam is subject to a final order of removal in which the Board upheld a frivolousness determination and that rendered her ineligible for adjustment of status. Part of the confusion, or at least discussion in this case, is the difference between finality and the language in the statute, which is final determination on such application. They're distinct. They're not the same thing. Finality is, in this case, the final order of removal that is appealable from the Board in a petition for review to this Court. I don't think anyone can test that we have finality. We have a final order of removal. It was the determinations that are made below. All of those determinations together make up the order of removal that is then appealed. One of those determinations is a frivolousness determination. In this case, it's the only determination because that frivolousness determination barred Mrs. Farnam from any other relief. That is the purpose of the frivolous asylum bar. When IRIR was enacted in 1996, the frivolous bar was put in place to reduce the likelihood that fraudulent or frivolous applications will enable deportable or excludable aliens to remain in the United States for substantial periods. So, in this case, when the IJ made that determination, it attached immediately. How do you square that language, the final determination language, with the 1208.20 that talks about the need for a final order? To me, that looks like we're going back into the final order of deportation, which is only going to happen until when the BIA says so, which it finally did here. It seems inconsistent to me trying to put together the regulation to spin it out the way that you just did. There are a couple of reasons why the government's reading is the proper reading in this case. First, the regulation is in present tense, specifically fines, not specifically found in prior proceedings, not in a prior final order of removal. Present tense is relevant here. But maybe more importantly, in fact, is that the decision is limited to the Board of Immigration Appeals and decisions by an immigration judge. There's no cross-reference there to 1101A47B and the term final order of removal. That entire sentence is referring to a determination made in removal proceedings. There are many determinations, as you just discussed in the last case, that are made outside of removal proceedings, such as before asylum officers. Asylum officers are not currently allowed to make frivolousness findings. They don't apply the frivolous asylum bar. They have to adjudicate the case on the merits. If it goes to immigration court, the immigration judge may then make the frivolousness determination if presented, but an asylum officer from the Department of Homeland Security cannot. So that sentence is limiting the application of the bar or the potential application for the bar only to those applications in removal proceedings. You're saying that the frivolousness can occur both in a removal proceeding and in non-removal proceedings, other proceedings. No, I'm saying it cannot. I'm saying the frivolous bar can only be found in removal proceedings by immigration judges and then by the Board of Immigration Appeals. It cannot be found in administrative proceedings before Department of Homeland Security currently. Now, in the briefs, we talk about the regulation, the global asylum rule that is currently enjoined, and that regulation actually changed this language to allow asylum officers to make frivolousness determinations and apply the frivolous bar in the first place. That rule has never been put into effect because it's enjoined before its effective date, but that is further support demonstrating that the intent behind the regulation, or at least the intent to change the regulation to include asylum officers, that the government reads that language as limiting who can make the determination, not that it only can be made after a final order is issued. But getting to the point that Your Honor started with at the beginning of my friend's argument is that there is a final order in this case. We now have one. We have that finality. We have a final order that included the frivolous determination, and that is the purpose of the frivolous asylum bar. It applies. As the 11th Circuit talked about in Barretto-Claro, the statute's purpose is a strict no-tolerance policy. It's not a discretionary weighing of whether someone submitted fraudulent documents. That can be part of an adverse credibility determination, of course, but once a fact finder goes and makes a determination of frivolousness that is a different analysis, and it is a strong, as I think the board called it, a death sentence to many applications, and the statutory purpose behind that is to discourage frivolous applications in the first place. Can we vacate the order here if we conclude that there was legal error by the failure to reach the merits of the withholding claim? I think not. In order to make a frivolous determination, even if it weren't going to be effective until a future proceeding, the IJ would still have to go through and make all of those findings. Here that happened, and there was no error because it was never contested. So to the extent that this court—this isn't the case to do that in, is my point, because if the court were to find error in a frivolousness determination, yes, it could vacate that and remand for further consideration on other issues as to eligibility, but here there was no question. A frivolous application had been filed, and so there was never any challenge to that, so there's nothing to vacate. Well, I mean, her argument is that, you know, it's a package deal in front of the IJ, and all my issues get resolved, then there's one appeal, and, you know, basically I'm hoping for a Hail Mary decision on my other claims, and all I want is my day in court on those two issues, and then it goes up to the BIA, and, you know, you'll do what you do. I mean, that's an efficient way to get this done. Well, I think that—I guess, yes, in that after it became final, which I would like to further discuss exactly why that's not true, but if the court were to buy that argument, then yes, it would have to remand for consideration because it would still be the same proceedings. If the IJ erred in applying the bar in this case, then it would have to be sent back, but the IJ didn't err. The agency in general did not err. The frivolousness determination can be made at any point, and so when we talk about deference, we're not talking about deference just to the promulgation of the regulation, but also the agency's construction of that regulation and construction of the frivolous asylum bar. Here, the agency and courts have upheld the agency's construction of the frivolousness. The frivolous asylum bar is effective as of—or is invoked, I'm sorry. The frivolous bar inquiry is invoked as of the filing of an application. It's not as of the adjudication of the application on the merits. It's not as of the appeal of anything. It's as of the filing of that application, and so once that frivolous application is filed, the consequences can attach, and so as soon as the agency starts to go through that inquiry, if it ends up making a frivolous determination, the consequences attach as of that determination. If you look at the statute, it makes clear. We're talking about the last sentence of the statute where it says effective as of the date of the final determination on such application, but that refers back to the very first sentence where it says if the attorney general determines that an alien has knowingly made a frivolous application, it's all the same determination. Has an application that is frivolous been made? If yes, the bar is effective. The board has applied that in situations contemporary— Why did you need your—why did you need 1208 then? Why do we need the regulation that is titled determining if an asylum application is frivolous? That's what's clearly— The regulation? It's adding loss to the statute, isn't it? I think it is not. I think it is clarifying that only immigration judges and board of attorneys can make decisions in the context of removal proceedings. It talks about the materiality element, which is not part of the statute. There are portions of the regulation that clarify how to make a frivolous determination that are relevant and important, but none of it talks about when—but the regulation doesn't talk about the effectiveness. The case law does. In matter of HYZ, the board talked about the frivolousness bar attaching at the same time as an adverse credibility determination. It was made in the same—at the same proceedings. In matter of XMC, that was a case in which the application—the frivolous application was filed and later withdrawn, and the consequences still attached in that case. In matter of YL, the board talked about the frivolousness inquiry as a preliminary finding, and there was no need to reach the merits. In Lew, this court talked about a frivolous asylum application that precluded someone, just as here, from being able to adjust status based on a I-130 petition that had been filed. In Rebus, I understand the facts are slightly different in that case, but what is important is that the frivolousness determination was dispositive even after the board reopened the proceedings. Once that frivolousness inquiry begins and a determination is made, the bar attaches, and it forever attaches. And then just as in this case, in the footnote three in matter of XMC, the board talked about there is no statute of limitations for frivolousness determinations, and I'm quoting, that an applicant may have been able to avoid the discovery that a prior application was frivolous does not prevent a later determination that it was indeed frivolous. It can happen at any time, and that just traces back to the clear statutory intent that this bar is meant to be extreme. The court has no further questions. We ask that the court to address. First, the government talks about the purpose of this bar, and talks about it in terms of it being a strict policy to enforce against people who have filed frivolous asylum applications and to deter future frivolous asylum applications. We agree, but under our interpretation of the regulation, it continues to do that work. The INA lays out all kinds of ways that people can get immigration benefits in this country, including after orders of removal, including after they have been deported from this country. People can petition to come back through family, through employment. They can seek non-immigrant visas, diversity visas, all kinds of immigration benefits. Those are barred if there's a frivolous filing, even under our interpretation, and the statute continues to do its work harmoniously with the plain language of the regulation. Second, government counsel lists a number of cases where the fact pattern shows that the frivolousness determination and the triggering of the bar happened in the same proceeding before the agency, including a matter of XMC, where it said there was no statute of limitations. We agree there's no statute of limitations, and we agree that it was proper for the IJ in this case to make the frivolous determination in these proceedings, which were many, many years after the asylum application. There was no problem with that. The problem is the invocation of the statutory bar where there's no final order, and the government attempts to talk around the requirements of a final order in the regulation, saying that the regulation only requires that the determination of frivolousness has been made, but the language is right there. It's final order, and final order is a well-known, defined term in the INA, so it's no accident that it's there, and they should be required to adhere to that. Assume here that the IJ made a finding of frivolousness and also reached the merits of your other claims and ruled in your client's favor, and then that's appealed up. Is it really conceivable that the BIA could affirm a frivolous determination and still acquiesce to relief on other grounds? Absolutely. If the statutory bar has not been triggered, then relief can be granted. I see that my time is up. I'd like to close by just stating that the Supreme Court has reminded us in these chavas that if people must turn square corners with the government, it can't be too much to expect the government to turn square corners when it deals with them. We would ask that this court require the agency to adhere to the plain language of its regulations, to grant this petition for review, to vacate the order, and remand for further proceedings. Thank you. Thank you,